### In re FINKELSTEIN.

### Ex parte IRVING INDUSTRIAL CORPORATION.

Circuit Court of Appeals, Second Circuit. June 10, 1929.

No. 326.

Francis E. Rivers, of New York City, for appellant.

Samuel C. Duberstein, of Brooklyn, N. Y. (Samuel C. Duberstein and Max Schwartz, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. Finkelstein was a lawyer, and Irving Industrial Corporation was his client. Finkelstein examined the title and drew the bond and mortgage covering certain lots in Nassau county, New York, upon which the corporation had arranged to make a building loan. The corporation advanced a part of the mortgage by checks drawn to the mortgagor, and paid the broker in the transaction a commission of $50, and paid Finkelstein a fee of the same amount for his services in examining the title and drawing the bond and mortgage. He drew the bond and mortgage so that it ran to himself, instead of to his client. The treasurer of the corporation, one Witz, who also was a stockholder in the company, protested against having the mortgage run to Finkelstein, but finally acquiesced upon the promise of the latter to execute an assignment of it to the company. The assignment was never made, in spite of repeated demands on the part of Witz. At the same time that the bond and mortgage were delivered, a building loan agreement between Finkelstein and the borrower was made, providing for the mortgage to secure the loan, and arranging for advances by installment to the amount of the face of the mortgage as the building should progress. The advances were made up to $4,100, whereupon, after default on the part of the mortgagor, the mortgage was foreclosed and the proceeds, amounting to $4,685.80, were turned over by the referee in foreclosure to the trustee in bankruptcy of Finkelstein, who had been adjudicated a bankrupt shortly before.

The Irving Industrial Corporation thereupon filed a petition in the bankruptcy court to reclaim the proceeds, on the ground that they were directly traceable to its own funds

which had been invested in the mortgage. The special commissioner, who was appointed to report to the court, found that the mortgage was at all times the sole property of Finkelstein, and that the proceeds in foreclosure accordingly passed to his trustee in bankruptcy. This report was confirmed by the District Court, and from the order of confirmation this appeal was taken.

█ Finkelstein and his relatives owned all the stock of the corporation, except the small minority interest belonging to Witz. Witz and Finkelstein, who were the only witnesses before the commissioner, gave the evidence which we have set forth. The commissioner concluded that the mortgage was the sole property of Finkelstein because Finkelstein had made very large payments to the corporation during the period when the mortgage was taken and was being held, and, because, when the mortgage under consideration was being foreclosed, Witz had testified before the referee in foreclosure that he was the agent of Finkelstein, and "as such negotiated the loan which was consummated in the bond and mortgage." The commissioner seems to have regarded the mortgage as purchased with the funds of Finkelstein because of the latter's large payments to the company. In his report he somewhat vaguely reasoned that: "There was an active relationship of debtor and creditor between the petitioner and Finkelstein, which precludes any merit in petitioner's claim that any act of his constituted a breach of trust as its attorney."

But Finkelstein certainly was the attorney of the company and was paid for his services in drawing this very bond and mortgage given to secure a loan made by the company's check. The documents all prove this, and it is impossible to imagine why the company should have paid him for his services if the moneys which furnished the loan, and the bond and mortgage taken to secure it were his own.

It is argued that section 94 of the New York Real Property Law (Consol. Laws, c. 50) applies and that the company cannot claim that the mortgage belonged to it. Under this section, where a grant of real property is made to one person and the consideration is paid by another, no trust results to the person paying the consideration unless the grantee, "in violation of some trust, purchases the property so conveyed with money or property belonging to another." But even if a mortgage, which under the New York law creates a mere lien and no longer conveys the legal title, could be regarded as

coming within the purview of the foregoing statute, as was held not to be the case in Carr v. Carr, 52 N. Y. at page 261, the trustee in bankruptcy could gain no advantage in the present situation. Finkelstein took the mortgage in his own name contrary to his original instructions under a promise to assign it, which he never fulfilled.

The New York statute abolishing resulting trusts only covers cases where, except for the statute, a trust would result from the mere fact of payment of the consideration by another than the grantee. Under familiar doctrine, the statute cannot be used to promote breaches of trust or to perpetrate a fraud. This it says in express terms, and the cases so hold. Carr v. Carr, 52 N. Y. at page 260; Waters v. Hall, 218 App. Div. 149, 218 N. Y. S. 31. Moreover, by settled principles of equity, this mortgage which had been purchased with the appellant's funds was impressed with a trust for its benefit. Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067. These principles, rather than section 94, supra, govern the situation.

█ The relation of Finkelstein to his client was fiduciary. When he took a mortgage in his own name, it was presumptively held by him as trustee, and he had the burden of disproving the legal inference. Whitehead v. Kennedy, 69 N. Y. 462. It is contended that the trustee has done this by showing large payments by Finkelstein to the company during the time when the mortgage was taken and still remained unpaid; but it is the rule that, in the absence of proof to the contrary, such payments are treated as made to liquidate obligations, and not to effect loans. Nay v. Curley, 113 N. Y. 575, 21 N. E. 698. We have no reason to suppose that the checks represented loans in this case.

The testimony of Witz in the foreclosure suit that he had arranged for the bond and mortgage as agent for Finkelstein had little significance. There was no occasion to go beyond the legal title, since no question there arose regarding the relative rights of Finkelstein and the company. His testimony was not intended to have any bearing on their relations. Two other mortgages taken by Finkelstein from the same borrower had been paid off, and the payments were turned over by him to the company. The mode in which those transactions were conducted bears out the contention of the company as to the real ownership of the mortgage here.

But, after all, the outstanding fact is that an attorney took a mortgage in his own name, which he had purchased with his client's

funds. If, for any reason, it belonged to him, he was obliged to prove this, and he has not done so.

The order is reversed, and the proceeding remanded, so that the proceeds of the mortgage shall be paid by the trustee in bankruptcy to the appellant, Irving Industrial Corporation.